1

2

3

4

5                UNITED STATES DISTRICT COURT

6               EASTERN DISTRICT OF WASHINGTON

7  LEAH MAXIM, o/b/o E.S.M., a minor
   child,                                    NO:  13-CV-0143-TOR
8
                          Plaintiff,         ORDER GRANTING DEFENDANT'S
9                                            MOTION FOR SUMMARY
          v.                                 JUDGMENT
10
   CAROLYN W. COLVIN, Acting
11 Commissioner of Social Security
   Administration,
12
                          Defendant.
13

14       BEFORE THE COURT are the parties' cross motions for summary

15 judgment (ECF Nos. 15 and 20).  Plaintiff is represented by Dana C. Madsen.

16 Defendant is represented by Diana Andsager.  The Court has reviewed the

17 administrative record and the parties' completed briefing and is fully informed.

18 For the reasons discussed below, the Court will grant Defendant's motion and deny

19 Plaintiff's motion.

20 ///

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

Plaintiff, on behalf of E.S.M., a minor child, seeks judicial review of the Commissioner's final decision denying E.S.M. Supplemental Security Income Child Benefits under Title XVI.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under §405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)).  "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion."  *Id.* at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  If the evidence in the record "is

1  susceptible to more than one rational interpretation, [the court] must uphold the

2  ALJ's findings if they are supported by inferences reasonably drawn from the

3  record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district

4  court "may not reverse an ALJ's decision on account of an error that is harmless."

5  *Id.* at 1111.   An error is harmless "where it is inconsequential to the [ALJ's]

6  ultimate nondisability determination."  *Id.* at 1115 (quotation and citation omitted).

7  The party appealing the ALJ's decision generally bears the burden of establishing

8  that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

9  **THREE-STEP PROCESS FOR CHILDHOOD DISABILITY**

10       To qualify for Title XVI (SSI) benefits, a child under the age of eighteen

11  must have "a medically determinable physical or mental impairment, which results

12  in marked and severe functional limitations, and which can be expected to result in

13  death or which has lasted or can be expected to last for a continuous period of not

14  less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).  The Commissioner has

15  established a three-step sequential analysis to determine whether a claimant

16  satisfies the above criteria.  20 C.F.R. § 416.924(a).  First, the Commissioner

17  considers whether the child is engaged in "substantial gainful activity."  *Id.* at

18  § 416.924(b).  Second, the ALJ considers whether the child has a "medically

19  determinable impairment that is severe," which is defined as an impairment that

20  causes "more than minimal functional limitations."  *Id.* at § 416.924(c).  Finally, if

the ALJ finds a severe impairment, he or she must then consider whether the impairment "medically equals" or "functionally equals" a disability listed in the "Listing of Impairments." *Id*. at § 416.924(c)-(d); *Id*. at § 404, Subpt. P, App. 1.

If the ALJ finds that the child's impairment or combination of impairments does not meet or *medically* equal a listing, he or she must determine whether the impairment or combination of impairments *functionally* equals a listing. 20 C.F.R. § 416.926a(a). The ALJ's functional equivalence assessment requires him or her to evaluate the child's functioning in six "domains." These six domains, which are designed "to capture all of what a child can or cannot do," are as follows:

> (1) Acquiring and using information;
> (2) Attending and completing tasks;
> (3) Interacting and relating with others;
> (4) Moving about and manipulating objects;
> (5) Caring for [oneself]; and
> (6) Health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(i)-(vi).

A child's impairment will be deemed to functionally equal a listed impairment if the child's condition results in a "marked" limitation in two domains, or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). An impairment is a "marked limitation" if it "interferes seriously with [a person's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). By contrast, an "extreme limitation" is defined as a limitation

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4

1  that "interferes *very* seriously with [a person's] ability to independently initiate,

2  sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3)(i) (emphasis added).

3  **ALJ'S FINDINGS**

4  E.S.M.'s application for Title XVI Supplemental Security Income payments

5  was filed on September 22, 2009, with an alleged disability onset date of August

6  22, 2009, her date of birth.  Tr. 145-47.  E.S.M.'s application was denied initially

7  and upon reconsideration, and E.S.M. requested a hearing before an ALJ.  Tr. 93-

8  95, 102-07.  A hearing was held on July 14, 2011.  Tr. 49-88.  The ALJ issued a

9  decision on August 11, 2011, finding that E.S.M. was not disabled under the Social

10  Security Act.  Tr. 24-42.

11  At step one, the ALJ found that E.S.M. had not engaged in substantial

12  gainful activity since September 2, 2009.[1]  Tr. 27.  At step two, the ALJ found that

13  E.S.M. had severe impairments consisting of Mosaic Turner's syndrome, GERD

14  secondary to Mosaic Turner's syndrome, developmental delay secondary to

15  Mosaic Turner's syndrome, hydrocephalus secondary to Mosaic Turner's

16  syndrome, congenital heart disease secondary to Mosaic Turner's syndrome, and

17  _____

18  [1] The ALJ's decision references September 2, 2009, as the date on which E.S.M.

19  applied for Title XVI benefits.  The application itself, however, references an

20  application date of September 22, 2009.  Tr. 145-47.

kidney abnormality secondary to Mosaic Turner's syndrome.  Tr. 27.  At step

three, the ALJ found that E.S.M. did not have an impairment or combination of

impairments that medically equaled or functionally equaled a listed impairment.

Tr. 27-30.  With respect to functional equivalence, the ALJ found that E.S.M. had

the following limitations on the six domains:

> (1)   Less than marked limitation in acquiring and using
>        information (Tr. 35-36);
>
> (2)   No limitation in attending and completing tasks (Tr.
>        36-37);
>
> (3)   Less than marked limitation in interacting and
>        relating with others (Tr. 37-38);
>
> (4)   Less than marked limitation in moving about and
>        manipulating objects (Tr. 38-39);
>
> (5)   Less than marked limitation in the ability to care for
>        herself (Tr. 40); and
>
> (6)   Marked limitation in health and physical well-being
>        (Tr. 41).

Thus, the ALJ concluded that E.S.M. had not been disabled under the Social

Security Act since the application date of September 2, 2009.  Tr. 41.

E.S.M. subsequently requested review by the Appeals Council.  Tr.

19-20.  The Appeals Council denied review on February 11, 2013, making

the ALJ's decision the Commissioner's final decision subject to judicial

review.  Tr. 1-6; 42 U.S.C. §§ 405(g), 1383(c)(3);  20 C.F.R. §§ 416.1481, 422.210.

## ISSUE

E.S.M. contends that the ALJ erred in failing to find that she had marked limitations in at least two of the six domains at step three of the sequential evaluation process.  ECF No. 15 at 8.  The thrust of her argument appears to be that the ALJ overlooked several test scores which show that she was not functioning at an appropriate age level.

## DISCUSSION

E.S.M.'s briefing is almost entirely devoid of legal argument.  The "Law and Argument" section of her opening brief consists of an eight-page summary of test results followed by three sentences of conclusory argument:

> Based [on] [E.S.M.'s] test results it is evident that [E.S.M.] has significant deficits.  The ALJ erroneously found, that [E.S.M.] was developmentally improving or otherwise normal with no marked limitations.[2]  As shown above, [E.S.M.'s] test scores show that in some areas she has improved, but in others her developmental progress and impairments have become worse.

---

[2] The assertion that E.S.M. was found to have no marked limitations is incorrect. The ALJ found that E.S.M. had marked limitation in the health and physical well-being domain.  Tr. 41.

ECF No. 15 at 13 (citation omitted).  In essence, E.S.M. has thrown a mass of test results at the wall and asked the Court to find some unspecified error in the ALJ's analysis.  This approach is woefully deficient.  If counsel wants the Court to find error in the ALJ's analysis, he must specify *why* and *how* the ALJ erred and support his analysis with citations to relevant statutes, regulations and case law. Simply regurgitating medical evidence and suggesting that the ALJ somehow "got it wrong" is not effective advocacy and will not be tolerated in future cases.

The ALJ found that E.S.M. suffered from "marked" limitation in the domain of health and physical well-being.  Tr. 40.  E.S.M. appears to be arguing that the ALJ should have found marked limitation in at least one additional domain such that her combination of impairments would functionally equal a listed impairment pursuant to 20 C.F.R. § 416.926a(a).  A "marked" limitation is defined, in relevant part, as "the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean."    20 C.F.R. § 416.926a(e)(2)(i); *see also* 20 C.F.R. § 416.926a(e)(2)(iii) ("[W]e will find that you have a 'marked' limitation when you have a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and your day-to-day functioning in domain-related activities is consistent with that score.").  For children under the

age of three, a marked limitation may also be found when the claimant is "functioning at a level that is more than one-half but not more than two-thirds of [his or her] chronological age when there are no standard scores from standardized tests in [the] case record." 20 C.F.R. 416.926a(e)(2)(ii).

With regard to the acquiring and using information and the attending to and completing tasks domains, E.S.M. notes that she scored in the sixth percentile on a Developmental Assessment of Young Children ("DAYC") test in April 2011. ECF No. 21 at 2. Because this score was only 1.60 standard deviations below the mean, *see* Tr. 36, 648, it does not place E.S.M. in the marked limitation category, *see* 20 C.F.R. § 416.926a(e)(2)(i), (iii). The ALJ did not err in finding that E.S.M. did not have marked limitations in these domains.

With regard to the interacting and relating with others domain, E.S.M. notes that (1) she scored in the thirteenth percentile on a language skills test in September 2009; (2) she scored in the fourth percentile on a test of receptive language skills and the third percentile on a test of expressive language skills in October 2010; and (3) her DAYC score in May 2011 for social-emotional development was at the level of an 8-month-old. ECF No. 21 at 2. Because her scores on (1) and (2) above were less than 2 standard deviations below the applicable mean scores, *see* Tr. 248, 641, they do not place E.S.M. in the marked limitation category, *see* 20 C.F.R. § 416.926a(e)(2)(i), (iii). And while the May

2011 score does appear to be more than 2 standard deviations below the mean, the ALJ was not required to find a marked limitation based upon that score alone. *See* 20 C.F.R. § 416.926a(e)(4)(i) ("[W]e will not rely on any test score alone. No single piece of information taken in isolation can establish whether you have a 'marked' or an 'extreme' limitation in a domain."); 20 C.F.R. § 416.926a(e)(4)(ii)(B) ("[W]e may find that you do not have a 'marked' or 'extreme' limitation, even if your test scores are at the level provided in paragraph (e)(2) or (e)(3) of this section, if other information in your case record shows that your functioning in day-to-day activities is not seriously or very seriously limited by your impairment(s)."). As Defendant notes, this score appears to have been discounted by the administrator of the test on grounds that it did not accurately reflect E.S.M.'s true ability to interact and relate with others:

> According to the Bayley Scales of Infant Development III, [E.S.M.'s] cognitive skills are at the 22 month level, with a scaled score of 11 and a composite score of 105. The Developmental Assessment of Young Children shows her social-emotional development to be at 8 months, with a standard score of 64. *This was based on parent report, and [E.S.M.] has many social skills beyond the ceiling cut-off of the test.*

Tr. 650 (emphasis added). In view of this comment, as well as the fact that the administrator of the test did not recommend E.S.M. for individualized special education therapy, *see* Tr. 650, the ALJ did not err in finding that E.S.M. suffered from a less than marked limitation in this domain.

With regard to the <u>moving about and manipulating objects</u> domain, E.S.M. contends that her "dexterity and mobile functioning were consistently found to be lacking." ECF No. 21 at 3. To whatever extent E.S.M.'s functioning in this domain was found to be "lacking," E.S.M.'s deficits did not rise to the level of a marked impairment. Once again, E.S.M.'s scores on the applicable standardized tests were less than two standard deviations below the mean values. Tr. 643, 647. And, as Defendant notes, E.S.M.'s functioning in this domain improved over time. When E.S.M. was evaluated in April 2011, her evaluator determined that "[E.S.M.'s] gross motor skills are well within the average range." Tr. 643. The ALJ's finding that E.S.M. suffered from less than marked limitations in this domain is supported by substantial evidence.

Finally, with regard to the <u>caring for yourself</u> domain, E.S.M. argues that "the ALJ failed to find marked limitations despite objective evidence to the contrary." ECF No. 21 at 3. The "objective evidence" cited by E.S.M. reveals that her scores fell less than two standard deviations below the applicable mean values. Tr. 447, 641, 648. Accordingly, the ALJ did not err in finding that E.S.M. suffered from less than marked limitation in this domain.

//

//

//

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11

**IT IS HEREBY ORDERED:**

   1.  Plaintiff's Motion for Summary Judgment (ECF No. 15) is **DENIED.**

   2.  Defendant's Motion for Summary Judgment (ECF No. 20) is

      **GRANTED**.

The District Court Executive is hereby directed to file this Order, enter

Judgment for Defendant, provide copies to counsel, and **CLOSE** the file.

**DATED** May 30, 2014.



                THOMAS O. RICE
           United States District Judge